[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The original plaintiff in this case is Anthony J. Perri and at all times relevant to this case he was and is an insurance agent and insurance broker as defined in Connecticut General statutes § 38a-702 and is licensed as such by the State of Connecticut in accordance with Connecticut General Statute § 38a-769
et seq. He is a principal in the Anthony J. Perri Insurance Agencies, Inc. at 175 West Main Street, New Britain, Connecticut After the commencement of this action Anthony J. Perri Insurance Agencies, Inc., was added as a party plaintiff.
The defendants in this case are Chester Grocki a/k/a Chet Grocki and Leo Grocki. They are and at all times mentioned herein were insurance agents as defined in Connecticut General Statutes § 39a-702 and licensed as such by the State of Connecticut in accordance with Connecticut General Statutes § 38a-769 and et.seq. also the principals in the defendant Grocki Insurance Agency Company (hereinafter "GIACO"). Leo Grocki is the president of GIACO and Chester Grocki is the vice president. GIACO is in the business of, inter alia, soliciting, negotiating and effecting contracts of property and casualty insurance. GIACO is located at 343 Allen Street, New Britain, Connecticut. CT Page 5341
The plaintiffs have filed a complaint in which they allege that on January 1, 1990, they and the defendants entered into an agreement wherein the plaintiffs agreed to place property and casualty insurance policies through the defendants and the defendants agreed to an apportionment of commissions earned on said insurance policies which included all "direct-billed" accounts and "agency-billed" accounts as well as "profit sharing" issued by the insurance companies for each year.
The plaintiffs further allege that since January 1, 1994, the defendants have refused to pay and account for the "direct-billed" commissions and that since 1990 the defendants have refused to pay and account for the "profit-sharing" apportionment.
They also allege that the defendants have further threatened to cancel property and casualty insurance policies placed by the plaintiffs and billed through the Perri Insurance Agency for alleged non-payment of premiums.
In addition, the plaintiffs accuse the defendants Chester and Leo Grocki of engaging in a pattern of behavior wherein they individually or together harassed Perri, his employees and his clients.
The plaintiffs seek an accounting of all direct-billed commissions and agency-billed commissions, all profit sharing and any and all other monies due to or by the plaintiffs to or by the defendants and an order of the court enjoining the defendants from canceling property and casualty insurance policies of the plaintiffs' clients and enjoining the defendants from engaging in harassment. They also seek the appointment of a receiver, compensatory damages, attorneys fees and costs and "such other relief as the court deems equitable".
The defendants have filed an answer to the amended complaint, a special defense and a setoff. In the answer the defendants admit the paragraphs identifying the parties. As to the paragraphs referring to GIACO and licensing of the parties, the defendants leave the plaintiffs to their proof. The defendants admit that portion of the paragraph in which the plaintiffs allege that they and the defendants entered into an agreement wherein the plaintiffs agreed to place property and casualty insurance policies through the defendants but they deny that this agreement took place on January 1, 1990. The defendants admit CT Page 5342 that portion of the paragraph in which the plaintiffs allege that they and the defendants agreed to an apportionment of commissions earned on said insurance policies which included all direct-billed accounts and agency-billed accounts. The defendants deny the balance of the paragraph which refers to profit sharing issued by the insurance companies. The defendants deny that they refused to pay and account for the direct-billed commissions and that they threatened to cancel property and casualty insurance policies placed by the plaintiffs and that they individually and together harassed Perri, his employees and his clients.
In paragraph ten of the complaint the plaintiffs allege that the defendants, Chester Grocki and Leo Grocki, individually or together have in fact stated and written to individuals that the plaintiffs have engaged in unlawful insurance and business practices and/or are otherwise unethical, untrustworthy or impecunious. These allegations are denied.
By way of special defense the defendants state that any and all statements made by the defendants as alleged in paragraph ten were made by the defendants believing that they were true and factual and in fact were true and factual.
In addition to their answer and special defense the defendants have plead a set off. In this setoff the defendants agree that the plaintiffs entered into an agreement with them that the plaintiff would act as a sub-agent of GIACO to sell certain property-casualty insurance policies to the general public to be placed through GIACO with various insurance companies with which GIACO had contractual agency agreements but that this agreement took place on March 6, 1990. They further allege that at that time it was agreed by the parties that initially plaintiffs would receive fifty percent of the commissions generated by the policies they sold but from time to time at GIACO's option the commission percentage plaintiffs were to receive would be changed based on the volume of work and services needed to be performed by GIACO to service plaintiffs' accounts.
The defendants further allege that the plaintiffs were not to participate in any profit sharing issued by any of the GIACO contract insurance companies. Plaintiffs were to pay their proportionate share of GIACO's errors and omissions policies and I would be responsible to pay a one percent per month late charge on any late payments or sums due GIACO and that they would follow CT Page 5343 the underwriting guidelines and proceedings of the various insurance companies and of GIACO.
The defendants further allege that the plaintiffs debt increased to $60,000.00 at which time they entered into an agreement to pay said sum in twelve equal monthly installments with interest at the rate of fourteen percent per annum, said payments to be deducted by GIACO from direct-billed commissions if any.
The defendants further alleged that by December 31, 1992 the plaintiffs were still indebted to GIACO in the sum of $55,000.00 which they again agreed to pay under the same conditions as before.
They also alleged that in addition to the sums owed GIACO as indicated above, GIACO advanced the sum of $10,000.00 so that they could cover checks issued to various insurance companies. In addition to the above the defendants allege that during their relationship and until the date of this pleading of setoff the plaintiffs had received credits for returned premiums on canceled insurance policies and were to reimburse their insureds therefor but they failed to reimburse their insureds and GIACO as the contracting insurance agency of record, paid said return premiums to certain of the plaintiffs' insureds.
The defendants allege that due to the plaintiffs conduct on and prior to February 24, 1994 the Grocki Agency acting through its president informed plaintiffs that GIACO would no longer accept new insurance applications from the plaintiffs and that GIACO would no longer buy any new business from them and that the they are still indebted to the defendants in the sum of $20,000.00.
The defendants claim money damages, attorneys fees and costs and such other relief as the court may deem proper.
The plaintiffs deny the allegations of both the special defense and the set-off.
The plaintiffs have filed a brief and a reply brief and the defendants have also filed a brief. Because of the detail involved in this case the court has before it a complete transcript of the record. CT Page 5344
On May 21, 1996, a date originally set for trial of this case, the court entered an interlocutory order based upon a stipulation by the parties that there is to be an accounting as to the respective economic affairs between the plaintiff and the defendants in regard to those personal lines and commercial lines customers who were placed through the plaintiff with the defendants commencing in 1990 and through to the current time; that there is to be an accounting as to all of these customers and that there would be an exchange of documents by each party needed to perform the accounting. Recognizing that each party had claims against the other it was ordered that these disputes would not be resolved in the accounting but rather the records would be exchanged in order for each party to make (clarify) their respective position for the court to resolve at a later date. The accounting was to take place between Anthony J. Perri and the defendant Chester Grocki as individuals but if for any reason these individuals were unable to continue with the accounting then the accounting would be taken over by an accountant to complete in order to report to this court per Section 52-401 of Connecticut General Statutes et seq. The accounting firm was to be selected by the court. The cost of the accountant would be split 50-50 during the course of the accounting. Upon the completion of the accounting and the anticipated return to court of litigation of the issues between the parties the court would have jurisdiction to determine who ultimately would pay for these accounting fees if they are incurred as is provided by statute. Thus, the agreement to pay 50-50 was without prejudice to the right of either party on subsequent hearing to ask the court to order the full accounting fees to be paid by the other party. It was further agreed that continuing commissions that are still ongoing for policies placed by the plaintiffs through the defendants insurance agency will be divided fifty percent to the plaintiff, fifty percent to the defendant without prejudice. The defendants were to prepare a monthly accounting and submit fifty percent of the commissions to the plaintiffs on a monthly basis by the 28th of each month until further order of the court. The defendants accountant, George Lawrence, was to provide to the court appointed accountant information and documents relating to or concerning the relationship between defendants and Anthony J. Perri. No orders were to be entered at this time with respect to the profit sharing.
An accountant was appointed by Judge Aurigemma but was unable to serve. Whereupon Judge Satter appointed Mrs. Victoria Pearson, CPA to act as court appointed accountant. Mrs. Pearson completed CT Page 5345 her work and filed her accounting with the court and the parties and also appeared as a witness in this case. The accounting is labeled "Commission Analysis Report for the period March 31, 1990 through August 31, 1997" and has been marked as Court Exhibit 1.
The plaintiff Anthony Perri had been continuously engaged in the insurance business since 1978. He established the Anthony J. Perri Insurance Agency in 1983 and from 1983 to 1990 he placed preferred or standard lines of property and casualty business with Roland Hookman of Hausman and Associates. In March of 1990 he became associated with the Grocki Agency. During this period he was not an "established agent". He did not have a marketing arrangement with any individual insurance company and was not an "appointed agent."
In 1990 he entered into an agreement with Chester Grocki wherein he engaged in a relationship known as the Grocki-Perri Associates. From the inception of the agreement Anthony Perri I received sixty percent of the commissions and GIACO forty percent with the exception of a certain account designated as the Adams Account. Mr. Perri during this period serviced his own accounts.
In May of 1994 Leo Grocki switched the commission percentage from 60-40 in favor of Mr. Perri to 40-60 in favor of the Grocki Agency.
There is no question that a contractual relationship was entered into between Anthony J. Perri and the Grocki Insurance Agency Company, wherein Perri would become a sub-agent of the Grocki Insurance Agency and would place his preferred-standard property-casualty insurance business through the Grocki Agency. The dispute lies in the terms of the agreement; the percentage of commission each party was to receive, the question of profit sharing and the inception date of the agreement i.e. whether the agreement was entered into on behalf of the Grocki Insurance Agency by Chet Grocki as Treasurer in January 1, 1990, or by its president Leo Grocki on March 6, 1990. Both parties agree that the initial contact by the Grocki Insurance Agency with Perri was made by Chet Grocki at the suggestion of another Grocki Insurance Agency sub-agent, Dino Puzo who had been a sub-agent of the Hausman Insurance Agency at a time when Perri was also associated with that agency.
Chet Grocki met with Perri on three occasions between December 1st and December 9, 1989. During that period they CT Page 5346 discussed commissions, profit sharing and ownership interest.
It is the opinion of this court that although a general outline for a contractual arrangement was probably reached at these conferences, the actual contract between the parties was not finalized with Chet Grocki but was in fact finalized and reached between Perri and Leo Grocki, the president of Grocki Insurance Agency in early March of 1990. It is also the opinion defendants this contract called for a 60-40 split except for the Adams policy, 60 for Perri and 40 for Grocki.
While Leo Grocki maintained that the agreement with Mr. Perri was to the effect that he (Grocki) could change the percentage of commissions at any time and in fact began at 50-59 his evidence was evasive, frought with inconsistent statements, and was contrary to the actual course of dealing between the parties. First, he claimed a 50-50 agreement and then he claimed no definite agreement, but a right on his part to change commissions at any time and later he claimed that a 60-40 split in Perri's favor took place in July of 1990.
Also, while Leo Grocki maintained that the reason for switching the percentage of commissions was due to Mr. Perri's failure to service his own accounts, this is not supported by the evidence. Grocki bases his claim upon a certain note (Exhibit N) asking for help from Mary Grocki. This note, however, appears to the court to be related to only one transaction. In fact, although that note was dated January 4, 1993 and was claimed to be the basis of the change, the actual change did not take place until May of 1994.
The 60-40 split is also substantiated by the testimony of Mrs. Pearson and her accounting. The accounting by the court appointed CPA, Mrs. Pearson, marked as court Exhibit No. 1 showed in tab no. 1, page 2, an analysis of certain differences between the parties and their accounting.
For purposes of discussion plaintiffs' counsel outlined a method of addressing various aspects of this case on a blackboard before the court. The figures on this blackboard were then transposed on paper and have been marked as plaintiff's exhibit 18. The court found this format and outline to be a useful tool and the defendants agreed in their brief to follow the format and outline the plaintiff used in addressing the various aspects of this case. CT Page 5347
The direct-bill commission dispute between the parties was properly identified by the accountant in column 3, page 2 of court exhibit 1 as $38,385.00. The accountant testified that this figure is comprised substantially of a dispute between the parties as to the 60-40 versus 40-60 split in direct-commissions. Despite the claim by the defendants that this sum should be reduced by $7,442.49 in commission checks paid to Todd Shoan, this was the result of an arrangement completely divorced from that between the Grockis and Mr. Perri. The court is of the opinion that the full amount of $38,385.00 is due Mr. Perri on a 60 Perri, 40 Grocki split of the direct-billed commissions. The plaintiff claims a small balance due of $369.00. The defendant apparently agrees with the accountant that the amount is negligible and does not warrant further discussion, thus the court will hold that the $369.00 is due the plaintiff.
The next item of consequence is the error and omissions insurance. By stipulation the parties agreed in court that the accountants difference for error and omissions insurance should be adjusted to $5,406.00. The court finds that there was no agreement between the parties as to the error and omissions insurance. The defendant simply added the names of the sub-agents to the policy and made no claim for errors and ommissions insurance until 1991 at which time Perri indicated his disagreement and whereupon nothing further was done until he agreed to the last charge for error and omissions insurance shown on the accounting because the business relationship in terms of ongoing placement of new policies had ended between the parties. Defendants failed to provide any itemization of exactly how the premiums allocated to the plaintiff was determined. No evidence was introduced as to any increase in premium due to the addition of Perri's name. Therefore, the court holds that the sum of $5,406.00 is due the plaintiff.
With respect to the item of legal interest on exhibit 18 also referred to as "account current interest" in the plaintiffs' brief the court is of the opinion that the sum of $16,730.00 was improperly withheld by the Grocki Agency. The defendants rely heavily on the letter of March 1, 1991 also labeled exhibit 5 in which they equate the term "late charges" with interest. The plaintiff denies that this was intended to be interest, allege that he signed the letter under coercion and that the principal purpose of signing was to protect the Grockis from the internal revenue in case IRS attempted to garnish the amounts owed the CT Page 5348 plaintiff in commissions. The court agrees with the plaintiff that the term late charges as used in this document is not tantamount to interest. The term late charges as used in that document, in the opinion of the court, refers to any late charges that might be imposed by the insurance companies on late payment of premiums and not to any interest on the amounts which the Grockis were to forward on behalf of the plaintiff. This view is in keeping with the holdings of the Connecticut court in the numerous cases cited by the plaintiff. Even if this were interpreted as interest rather than late charge, the defendant has failed to establish the damages and the amount of interest which should be assessed. In addition, the court notes that the accountant has proven that the defendants had double billed interest on their account.
In the opinion of the court there is little doubt, if any, that the plaintiff agreed to the amortization of the sum of $38,000.00 and $55,000.00 with interest at 14 percent. The debts were paid, the interest was paid. The only question is that raised by the plaintiffs as to whether or not the interest was usurious. In the opinion of the court these were commercial loans, the amounts were in excess of $10,000.00 and they fell within the exception of general statute section 37-9 (4). The argument as to whether or not the interest rate is usurious has to do with the amount of interest agreed upon by the parties which was 14 percent. The plaintiff however, has raised another issue pointing out that the accountant, in analyzing the books of the parties has come to the conclusion that the defendants had overcharged on the interest in such a way that the interest amounted to 25 percent rather than 14 percent. The difference between interest at 14 versus 25 percent is $2,377.08 on the $38,000.00 transaction and $3,440.52 on the $55,000.00 transaction. In the opinion of the court, the plaintiff is entitled to $5,817.60 on account of interest on the loans.
In October of 1992 the defendants gave the plaintiff a credit of $10,000.00 by virtue of a broker statement dated October 31, 1992 marked as exhibit 9, this has been labeled by Perri as an expense reimbursement. Although Leo Grocki testified that he never agreed to give Mr. Perri an expense reimbursement and never would have referred to the payment as such, in his own handwriting he wrote on February 17, 1993 that Mr. Perri had received in 1992 an "expense share" of $10,000.00, Exhibit No. 27, page 2. The purpose of this memorandum was to show Mr. Perri the taxable income he had received from the Grockis during 1992. CT Page 5349 Mr. Grocki, a year and one half later attempted to categorize this transaction as a loan. In view of the actual actions of the parties and the written documentation the court has no choice but to agree with the plaintiff that this was an expense reimbursement in recognition by the Grockis that Perri was experiencing more significant expenses than anticipated and in recognition by the Grockis of the significant increase Perri was generating for the benefit of the Grocki Agency. Thus in the opinion of the court this $10,000.00 should be credited to the plaintiff.
Perri claims that check #2794 dated November 17, 1993 was never credited to his account and does not appear in Grocki's accounting records. It is true that this check was an off book item and was never given to the accountant. But it does exist, it clearly should have been in the books of the plaintiff. The defendants had produced checks at trial which were not disclosed to the accountant nor to the plaintiff and thus in the opinion of the court it would be unfair to eliminate this check. Therefore, the court is of the opinion that this check in the amount of $2,300.00 should be credited to the plaintiff.
Check no. 1974 was a check in the sum of $3,000.00 issued by the First City Bank on October 15, 1991. Perri testified that he could not find a credit to him represented by said check. Once again the check or at least a copy of it does exist. The only argument raised by the defendants is they searched the agency records and could not isolate a $3,000.00 deposit for November 30, 1991. On cross-examination however, Mr. Grocki admitted that he had been supplied by the bank with verification that bank check #1974 had in fact been deposited into his account. The sum of $3,000.00 should be credited to Mr. Perri.
With respect to the item of the $3,000.00 deduction from commissions appearing on Exhibit No. 18, although same was not brought forth by the defendants until trial, Mr. Perri indicated that he does not dispute the deduction of $3,000.00 from the direct-billed commissions and withdraws any claim to this item.
An issue of major importance in this controversy is that of profit sharing. While the court has no doubt that the parties discussed the issue of profit sharing during the course of the preliminary discussions in 1989, it is of the opinion that profit sharing was never agreed to by the defendants. Unlike other items in controversy which are backed up by an actual course of action CT Page 5350 or documentation, no evidence has been produced here by the plaintiff to prove an agreement as to profit sharing.
The fact that the addition of Perri's substantial business In some cases brought the Grockis over the threshold for receiving profit sharing may well be true but it is not any evidence that there was an agreement that it should be shared by Mr. Perri and the fact that Mr. Perri claimed only a small percentage of the profit sharing is not any evidence. The court also cannot overlook the fact that the Grockis over their long period in the business had never agreed to profit sharing with any other subagents and that the matter of profit sharing was not raised in this case until the amended complaint which was filed in May of 1996.
While in general the testimony of the plaintiff has been straight forward and that of the defendants, particularly Leo Grocki, has often been evasive and uncooperative the court cannot find that an agreement existed.
The court concludes that Mr. Perri feels that he should be entitled to the profit sharing because of his contribution to the income of the Grockis which in many cases made them eligible for profit sharing, but this does not amount to evidence of an agreement.
Thus, as to the item of $16,936.00 appearing on Exhibit No. 18, (profit sharing) the court is of the opinion that the same should not be credited to the plaintiff.
Both the plaintiff and the defendant point out that the figure of $38,385.00 described in exhibit 18 deals with the direct-billed commissions only through the conclusion of the accountants work in 1997. From the records available to both parties Mr. Perri brought the difference in commission split as between the parties through May 1998 and found it to be $2,027.42, which amount he claims. While the defendants agree as to the amount, they claim that due to the differences in the claim as to the percentage of commissions it should be due them. The court finds as indicated earlier that the commission split was 60 Perri, 40 Grocki and therefore awards the amount of $2,027.42 to the plaintiff.
Judgment may enter for the plaintiff in the amount of $84,035.02 on the original complaint and judgment may enter for CT Page 5351 the plaintiff in the defendants' counterclaim.
At a hearing held on March 8 and 9, 1999, concerning the plaintiffs' Motion for Contempt alleging that the defendant had violated the court order issued by Judge Aurigemma on May 1, 1996 by not providing the plaintiffs with accurate information regarding commissions accruing since April 1, 1996 the court found the defendants in contempt and ordered the defendants to pay the plaintiffs $1286.73 as the balance of commissions due in accordance with the court order. The court also ordered the defendants to pay the plaintiffs' attorney's fee incurred in respect to the contempt proceeding.
This contempt hearing and the court order was based on the temporary fifty percent split ordered by Judge Aurigemma. In the light of this court's ruling on the 60%-40% split of commissions based upon the merits of the case the final judgment of the court includes the commissions due the plaintiffs from April 1, 1996 at 60%.
Hale, JTR